**In re the CONSERVATORSHIP
OF W.L., a minor.**

**No. C1–96–40.**

Court of Appeals of Minnesota.

July 30, 1996.

O. Jerome Newsom, Newsom Law Offices, Minneapolis, for appellant First Bank.

James M. Crist, Steinhagen & Crist, P.L.L.P., Edina, for respondent Empire Fire & Marine Ins. Co..

James M. Lockhart, Minneapolis, for respondent mother.

Sharon Buffington, Buffington Law Office, Stillwater, interim conservator.

Considered and decided by HARTEN, P.J., and DAVIES and WILLIS, JJ.

## OPINION

DAVIES, Judge.

Bank appeals district court's order holding bank, rather than a conservator's surety, liable for the conservator's unauthorized withdrawals from a conservatorship checking account. Bank also claims that the court erred in stripping it of a security interest in a conservatorship certificate of deposit and in awarding the conservator's surety attorney fees payable from conservatorship funds. We reverse as to the attorney fees, but otherwise affirm.

## FACTS

W.L., a minor, was awarded approximately $100,000 in his father's wrongful death suit. W.L.'s mother, Angela D. Hogan, was ap-

pointed conservator of the funds, with the restriction that there was to be "no distribution of any funds until further order of the Court." Letters of General Conservatorship of a Minor (letters) were issued, similarly directing that "Funds not to be withdrawn except on order of Court."

The court ordered that a portion of the conservatorship funds be placed in a money market savings/checking account at Commercial State Bank of St. Paul (Commercial), from which account Hogan was authorized to draw monthly child support payments. The remaining money (approximately $85,000) was placed in a certificate of deposit (CD) stamped "No Withdrawals of Principal Except by Court Order or Until the Minor Reaches Majority." To ensure the faithful discharge of her duties, Hogan executed a surety bond with Empire Fire & Marine Insurance Company (surety).

A few years after becoming conservator, Hogan applied for, but was denied, a car loan from appellant First Bank National Association, West Broadway office (First Bank). After Hogan successfully petitioned to transfer the conservatorship funds from Commercial to First Bank, she immediately, and without authority, withdrew $15,000 from the conservatorship checking account. Hogan then reapplied for the loan. First Bank approved the loan (for $15,000) on the condition that Hogan grant it a security interest in the conservatorship CD. The loan proceeds were credited to the account.

Hogan then wrongfully withdrew another $2,900 from the conservatorship checking account. Learning of this withdrawal, the court issued an "Order and Citation to Account" stating that "there has been a withdrawal from the money market account of $2,900.00 without prior court approval." After a hearing, the court removed Hogan as conservator and ordered that all conservatorship funds be frozen. Within a few days after that order, Hogan wrongfully withdrew an additional $5,500.

The court found First Bank liable for the $2,900 and $5,500 withdrawals (in addition to other sums) and stripped it of its security interest in the CD. It also awarded the surety $4,000 in attorney fees—payable from

conservatorship funds—for pursuing the action to impose the loss on the bank.

## ISSUES

I. Did the district court err in finding First Bank liable for the money Hogan unlawfully withdrew from the conservatorship checking account?

II. Did the court err in stripping First Bank of its security interest in the conservatorship CD?

III. Did the court err in awarding to the surety attorney fees payable from the conservatorship funds?

## ANALYSIS

### I.

■ Appellant First Bank argues that it had not received the letters of conservatorship and that the district court erred in finding that it had. We normally review a district court's factual findings under the clearly erroneous standard. Minn. R. Civ. P. 52.01. In this case, though, it is irrelevant whether the finding is erroneous, for First Bank had a duty to determine Hogan's legal authority over the conservatorship funds, regardless of whether it had actually received the letters. See Vadnais v. State, 224 Minn. 439, 442, 28 N.W.2d 694, 696 (1947) ("Those who deal with a guardian are bound, at their peril, to determine under what authority he acts."); cf. Minn.Stat. § 525.56, subd. 4 (1994) (setting forth duties of both guardians and conservators).

■ Because First Bank knew the funds were conservatorship funds, it had a duty to discover under what authority Hogan, the conservator, was acting—meaning, simply, that it had a duty to obtain a copy of the letters. If First Bank indeed transacted business without the letters, it did so at its own risk. The letters were stamped with the phrase "Funds not to be withdrawn except on order of Court." Under Minn.Stat. § 525.5515, subd. 2(d) (1994), that phrase, as a matter of law, imposed legal limitations on the conservator.

First Bank argues that a subsequent court order modified the original letters, creating a demand checking account without any restrictions. We disagree. The order, which is silent as to restrictions on the conservatorship checking account, does not expressly or impliedly affect the restriction in the letters.

## II.

First Bank claims that the court erred in invalidating its use of the conservatorship CD to secure Hogan's personal loan. We disagree. As stated previously, First Bank had a duty to discover what restrictions, if any, were placed on the conservatorship accounts. In other words, it had a duty to obtain essentially the same "actual knowledge" as that referred to in Minn.Stat. § 520.08 (1994), which provides that a bank is liable for a fiduciary's unauthorized withdrawals by a check from a principal's account if it

[1] pays the check with actual knowledge that the fiduciary is committing a breach of an obligation as fiduciary in drawing such check, or [2] with knowledge of such facts that its action in paying the check amounts to bad faith.

The bank's taking of the security interest had the same effect as if the bank had paid a check drawn against the conservatorship account. The district court, by finding that First Bank had knowledge that Hogan was breaching her obligation as a fiduciary in authorizing withdrawal of the funds, essentially, and properly, held First Bank liable under this statute.

We realize that our ruling imputes *actual* knowledge to First Bank. But to hold otherwise would reward First Bank for its failure to obtain the letters. Such a result is intolerable. Accordingly, we affirm the district court's decision to strip First Bank of its security interest in the CD.

## III.

First Bank claims that the court wrongfully depleted the conservatorship assets by awarding the surety $4,000 in attorney fees payable from those funds.[1]

Minn.Stat. § 525.703, subd. 2 (Supp. 1995), provides that the court shall award fees for "necessary [legal] services" provided for the conservatee's benefit. The statute makes clear that the allowance of attorney fees is generally a discretionary matter. *In re Conservatorship of W.R.L.*, 396 N.W.2d 705, 707 (Minn.App.1986). The question of whether the attorney fees were for a necessary service is a question of fact, which we will not set aside unless clearly erroneous. Minn. R. Civ. P. 52.01.

The depletion of the conservatorship funds by the attorney fees award here cannot be justified on the grounds that it was a necessary service for W.L.'s benefit; W.L. should not be forced to pay for the costs of litigation arising from fiduciary breaches when the surety is obligated to protect W.L. from such breaches. His assets—and his future—have been compromised enough. We will not allow an award of the surety's attorney fees to deplete the assets further. We reverse the award to the surety.

## DECISION

The trial court was correct in holding First Bank liable for the unlawfully withdrawn money and in stripping it of its security interest. The court erred, however, in awarding attorney fees payable from the conservatorship funds.

**Affirmed in part and reversed in part.**

---

1. Because we have established that the bank is acting, in some regard, in a fiduciary capacity, it has standing to raise this issue; like a conservator, it, too, has a duty to protect the assets from depletion. *See In re Conservatorship of Moore*, 409 N.W.2d 14, 16–17 (Minn.App.1987) (both conservator and court have duty to safeguard conservatorship assets).